IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ERIN STEPHENSON,

        Plaintiff,

v.                                                  CIVIL ACTION NO. 2:16–cv–11819

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Summary Judgment)

Pending before the court are the Motion for Partial Summary Judgment [ECF No. 13] and the Amended Motion for Summary Judgment [ECF No. 15] filed by defendant C. R. Bard, Inc. ("Bard"). The plaintiff has responded [ECF No. 19], and Bard has replied [ECF No. 20]. Thus, the Motions are ripe for adjudication. As set forth below, the Motion [ECF No. 13] is **DENIED as moot** and the Amended Motion [ECF No. 15] is **GRANTED in part** and **DENIED in part**.

I.     Background

This action involves a Michigan plaintiff who was implanted with the Align Urethral Support System, a mesh product manufactured by Bard, on February 15, 2010 in Petoskey, Michigan. Short Form Compl. [ECF No. 1] ¶¶ 1–12. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs,

there are more than 24,000 cases currently pending, approximately 3000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least 20 cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 332 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 244, *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187, Mar. 3, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 5 case.

II. **Legal Standards**

    A. **Summary Judgment**

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Id.*

3

at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23.

### B. Choice of Law

The parties agree that Michigan choice-of-law principles apply to this case and that these principles compel the application of Michigan substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted with the product. *See Sanchez v. Bos. Sci. Corp.*, 2:12–cv–05762, 2014 WL 202787, at

4

\*4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, the implantation surgery took place in Michigan. Thus, Michigan's choice-of-law principles guide the court's choice-of-law analysis.

Michigan's choice-of-law analysis begins with the presumption that Michigan law applies "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997).

> In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.*

Here, the plaintiff resides in Michigan, she was implanted with the product at issue in Michigan, and her alleged injuries and follow-up care occurred in Michigan. Accordingly, I **FIND** that no other state has an interest in having its law applied, and I apply Michigan's substantive law to this case.

### III.  Analysis

Bard argues it is entitled to summary judgment on all of the plaintiff's claims because they are barred by the relevant statutes of limitations and because the plaintiff is unable to establish causation, which is an essential element to all of her

5

claims. Bard also argues it is entitled to summary judgment on the plaintiff's strict liability and punitive damages claims because they are not recognized under Michigan law.

### A. Conceded Claims

The plaintiff concedes the following claims: Count II (Strict Liability – Design Defect); Count III (Strict Liability – Manufacturing Defect); Count IV (Strict Liability – Failure to Warn); and Count V (Breach of Express Warranty). Accordingly, Bard's Amended Motion regarding these counts is **GRANTED**.

### B. Statutes of Limitations

Bard contends that it is entitled to summary judgment on all of the plaintiff's claims because they are barred by the applicable statutes of limitations. Under Michigan law, all products liability claims are subject to a three-year statute of limitations. Mich. Comp. Laws § 600.5805(13). Although breach of warranty claims are typically subject to a four-year statute of limitations, *id.* at § 440.2725(1), when the breach is related to an underlying personal injury claim, the statute of limitations governing personal injury claims applies instead. *See Hertzler v. Manshum*, 200 N.W. 155, 157 (Mich. 1924). Thus, a three-year statute of limitations governs all of Ms. Stephenson's claims.

The limitations period begins to run when the claim accrues. Mich. Comp. Laws § 600.5827. "[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Id.* Most states apply a "discovery rule" to the statutory limitations period, which postpones accrual until a

plaintiff discovers, or through reasonable diligence should have discovered, his or her injury and the causal connection between the plaintiff's injury and the defendant's breach of duty. *See Jones v. Trs. of Bethany Coll.*, 351 S.E.2d 183, 185 (W. Va. 1986) (collecting cases). However, Michigan does not apply a discovery rule in products liability actions unless one is expressly provided by statute. *Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 738 N.W.2d 664, 680 (Mich. 2007).

There is no statutory discovery rule for products liability claims sounding in negligence. However, Michigan does have a statutory discovery rule for breach of warranty claims. For these claims, "the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered." Mich. Comp. Laws § 600.5833. The Supreme Court of Michigan has interpreted this to mean "that a plaintiff's cause of action accrues when, on the basis of subjective facts, the plaintiff should have known of an injury, even if a subjective belief regarding the injury occurs at a later date." *Moll v. Abbott Labs.*, 506 N.W.2d 816, 825 (Mich. 1993). Specifically, "[a] plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a *possible* cause of action," not when the plaintiff discovers or should have discovered the likely cause of his or her injury. *Id.* at 826–27 (quoting *Bonney v. Upjohn Co.*, 342 N.W.2d 551, 554 (Mich. Ct. App. 1983)). In rejecting the "likely cause" standard in favor of the "possible cause" standard, the Michigan Supreme Court explained, "Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action. We see no need to further protect the rights of the plaintiff to pursue a claim, because the

plaintiff at this point is equipped with sufficient information to protect the claim." *Id.* at 828.

In this case, Ms. Stephenson was implanted with the allegedly defective mesh product on February 15, 2010. Accordingly, her negligence claim accrued on that date. Ms. Stephenson had until February 15, 2013 to file her negligence cause of action. Ms. Stephenson filed her claim on December 7, 2016—almost four years after the limitations period had run. Ms. Stephenson does not dispute that her negligence claim is time barred under the three-year statute of limitations. Instead, she urges the court to apply equitable tolling to her negligence claim because of her long history with drug abuse.

The Sixth Circuit has "identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). However, the Supreme Court of Michigan has made clear that equitable tolling "is limited to those circumstances when the courts themselves have created confusion." *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 679 (Mich. 2007). Thus, in order for equitable tolling to apply, the plaintiff must demonstrate that she has "detrimentally relied on confusing, pre-existing case law." *Id.*

Here, Ms. Stephenson has not presented any evidence of detrimental reliance on "confusing, pre-existing case law." Therefore, I decline to apply equitable tolling to the plaintiff's negligence claim, and I **FIND** that the plaintiff's negligence claim is barred by the statute of limitations. Accordingly, Bard's Amended Motion is **GRANTED** with respect to Count I (Negligence).

Turning to the plaintiff's breach of implied warranty claim, this claim accrued when Ms. Stephenson discovered, or through the exercise of reasonable diligence should have discovered, her injury and its possible cause. *Moll*, 506 N.W.2d at 826–28. Bard argues that this occurred shortly after the plaintiff's implant surgery in February 2010, when the plaintiff first began experiencing dyspareunia and incontinence. Ms. Stephenson argues that her warranty claim accrued in either 2014 or 2015, after her mother told her about an advertisement she had seen regarding potential lawsuits for transvaginal mesh products.

After reviewing the evidence submitted by both parties, I **FIND** that a genuine dispute of material fact exists regarding when the plaintiff, through the exercise of reasonable diligence, should have discovered that her injuries were *possibly* caused by her synthetic mesh implant. Accordingly, Bard's Amended Motion on this ground is **DENIED** with respect to Count VI (Breach of Implied Warranty).

### C. Causation

Bard argues that it is entitled to summary judgment on the plaintiff's breach of implied warranty claim because the plaintiff is unable to establish that any alleged breach by Bard caused the plaintiff's alleged injuries. Bard notes that the plaintiff

has disclosed only one specific causation expert to testify in this case, Dr. William Porter, and he testified during his deposition that he could not rule out certain other conditions as potential causes of the plaintiff's injuries. In response, the plaintiff points to Dr. Porter's export report, wherein he concluded "to a reasonable degree of medical probability that [the Align mesh implant was] a cause of Ms. Stephenson's voiding dysfunction and urinary tract infections." Pl.'s Mem. Opp'n to Bard's Mot. Partial Summ. J. Ex. 4, at 6 ("Porter Report") [ECF No. 19-4].

Under Michigan law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mich. Comp. Laws. § 440.2314. To establish a cause of action for breach of implied warranty, "the plaintiff 'must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains.'" *Kenkel v. Stanley Works*, 665 N.W.2d 490, 496 (Mich. Ct. App. 2003) (quoting *Piercefield v. Remington Arms Co.*, 133 N.W.2d 129, 135 (Mich. 1965)). "[A]s part of its prima facie case, a plaintiff must show that the manufacturer's negligence was the *proximate cause* of the plaintiff's injuries." *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994). This "entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.'" *Id.* "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* "[T]he plaintiff is not required to produce evidence that positively eliminates every other potential cause[,]" *id.* at 478, but "must introduce evidence which affords a reasonable basis for the conclusion that

10

it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Id.* at 481 (quoting *Mulholland v. DEC Int'l Corp.*, 443 N.W.2d 340, 350 n.18 (Mich. 1989)).

In this case, Dr. Porter concluded in his expert report that "it is my opinion to a reasonable degree of medical probability that a cause of Ms. Stephenson's voiding dysfunction and urinary tract infections is her Align mesh due to the chronic inflammation with polypropylene mesh." Porter Report 6. His report also states that "[i]n considering the cause of the voiding dysfunction and urinary tract infections suffered by Ms. Stephenson, I concluded that her Align mesh was a cause of her difficulties." *Id.* In addition, Dr. Porter's report states that he considered other potential causes of the plaintiff's injuries and "concluded that they could not be ruled out as a source of her voiding dysfunction or urinary tract infections." *Id.*

During his deposition, Dr. Porter explained in more detail why he did not believe that these alternative causes were responsible for the plaintiff's injuries, but admitted that he could not rule them out completely.

> Q. Is that still your opinion here today, that you cannot rule out Ms. Stephenson's other conditions, including pelvic organ prolapse and atrophy, as potential causes of her voiding dysfunction?
>
> A. Right. So, I mean she—I don't think—and that's my opinion. I can't rule it out 100 percent, but I still believe that her voiding dysfunction—and I still believe her UTIs are related to her voiding dysfunction, and I don't think it's due to the prolapse, because her prolapse is mild. And it was severe enough that Dr. Danz would think that her retention is due to the cystocele. I think she would offer some sort of intervention, such as either, you know, pessary or surgery again. So I don't, really, think the prolapse is

11

> causing her retention or incomplete bladder emptying. So I still believe it's due to the sling.
>
> And, now, going back how far this goes back, after what we have documented in 2012, and I think maybe that's why she was having more bladder infections. But, again, that's my opinion, per se. But she does have a long history of UTIs.
>
> So can I rule out her prolapse? I can't rule it out 100 percent, but I think the voiding dysfunction is more than 50 per—51 percent due to the obstructive sling procedure. So I can't rule it out 100 percent, but I believe the cause is due to the sling.

Def.'s Am. Mot. Summ. J. Ex. E (Porter Dep.), at 561:7–562:9 [ECF No. 15-1].

As stated above, "the plaintiff is not required to produce evidence that positively eliminates every other potential cause[,]" *Skinner*, 516 N.W.2d at 478, but "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Id.* at 481. Here, the plaintiff's only specific causation expert, Dr. Porter, stated that it is more likely than not that the plaintiff's voiding dysfunction is "due to the obstructive sling procedure." Thus, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff, I **FIND** that a genuine dispute of material fact exists with regard to the causation element of the plaintiff's breach of implied warranty claim. Accordingly, Bard's motion on this ground is **DENIED** with respect to Count VI (Breach of Implied Warranty).

### D. Punitive Damages

Finally, Bard contends that it is entitled to summary judgment on the plaintiff's claim for punitive damages because punitive damages are not available

under Michigan law. Specifically, Bard argues that Michigan law does not allow for the recovery of punitive damages unless expressly authorized by statute, and Michigan's products liability statute does not so authorize. *See* Mich. Comp. Laws § 600.2946a. The plaintiff does not dispute that Michigan law does not generally permit the recovery of punitive damages. However, the plaintiff notes that Michigan allows for the recovery of "exemplary" damages "as an element of compensatory damages." *See Eide v. Keisey-Hayes Co.*, 427 N.W.2d 488, 498 (Mich. 1988). Therefore, the plaintiff requests that, if any of her substantive claims survive, she should be entitled to seek exemplary damages from Bard.

The parties are correct that Michigan law does not allow for the recovery of punitive damages unless expressly authorized by statute. *See Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006). Furthermore, the parties are also correct that Michigan's products liability statute does not authorize the recovery of punitive damages. *See* Mich. Comp. Laws § 600.2946a.

Nonetheless, the plaintiff attempts to recast her punitive damages claim as a request for exemplary damages under Michigan law. But, as the plaintiff herself notes, "[e]xemplary damages are compensatory in nature, not punitive, since they are actually an element of actual damages." *Rinaldi v. Rinaldi*, 333 N.W.2d 61, 63 (Mich. Ct. App. 1983). Thus, the plaintiff's punitive damages claim cannot survive on a theory of exemplary damages because exemplary damages are, by definition, non-punitive. Accordingly, Bard's Motion as to Count XIII (Punitive Damages) is **GRANTED**.

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Amended Motion for Summary Judgment [ECF No. 15] is **GRANTED** with respect to Count I (Negligence); Count II (Strict Liability – Design Defect); Count III (Strict Liability – Manufacturing Defect); Count IV (Strict Liability – Failure to Warn); Count V (Breach of Express Warranty); and Count VIII (Punitive Damages), and these claims are **DISMISSED with prejudice**. Bard's Amended Motion is **DENIED** with respect to Count VI (Breach of Implied Warranty). It is further **ORDERED** that Bard's Motion for Partial Summary Judgment [ECF No. 13] is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 31, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE